**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

ROBERT FIORAVANTI, Individually and on Behalf of All Others Similarly Situated, and
Derivatively on Behalf of KODIAK OIL & GAS CORP.,

        Plaintiff,

    v.

WILLIAM J. KRYSIAK,
RODNEY D. KNUTSON,
HERRICK K. LIDSTONE, JR.,
LYNN A. PETERSON,
JAMES E. CATLIN,
WHITING PETROLEUM CORPORATION, and
1007695 B.C. LTD.,

        Defendants.

and

KODIAK OIL & GAS CORP., a Canadian Corporation,

      Nominal Party.

---

**VERIFIED DERIVATIVE AND CLASS ACTION COMPLAINT FOR BREACH OF
FIDUCIARY DUTIES AND JURY DEMAND**

Plaintiff Robert Fioravanti ("Plaintiff"), by his attorneys, brings this class action derivatively on behalf of Kodiak Oil & Gas Corp. ("Kodiak Oil" or the "Company"), and on behalf of himself and all stockholders of Kodiak Oil, other than Defendants and their affiliates, against the Company's board of directors (the "Board") for breaching their fiduciary duties in connection with Whiting Petroleum Corporation's ("Whiting Petroleum") proposed acquisition, via 1007695 B.C. LTD. ("Merger Sub"), of all the outstanding stock of Kodiak Oil.  Plaintiff also brings this class action on behalf of stockholders of Kodiak Oil against Whiting Petroleum and Merger Sub for aiding and abetting the aforementioned breaches of fiduciary duties.  The allegations in this complaint are based on information and belief, including investigation of counsel and review of publicly-available information, except for those concerning Plaintiff himself and his own acts, which are alleged upon his own personal knowledge.

## NATURE OF THE ACTION

1.      On July 13, 2014, Kodiak Oil and Whiting Petroleum announced a definitive agreement (the "Arrangement Agreement"), pursuant to which Whiting Petroleum will acquire all of the Company's outstanding shares of common stock (the "Proposed Transaction").  Kodiak Oil's stockholders stand to receive 0.177 shares of Whiting Petroleum's stock for each share of the Company's common stock they currently own (which amounts to about $13.90 per share based upon Whiting Petroleum's closing price on July 11, 2014).  Total transaction consideration is approximately $6 billion, of which $2.2 billion is Kodiak Oil's net debt.

2.      As described below, both the take-under value to Kodiak Oil's stockholders contemplated in the Proposed Transaction and the process by which Defendants consummated the Proposed Transaction are inadequate and unfair to Plaintiff and all other public stockholders of the Company.

3.      The merger consideration is inadequate in light of the Company's recent solid financial performance and potential for future growth.  Based on the $13.90 per share price at the time of the announcement of the Proposed Transaction, the deal consideration provides a ***$0.33 discount*** for Kodiak Oil stockholders when compared to the July 10, 2014 closing price. Conversely, the average premium paid for North American oil or gas producers in deals larger than $1 billion has been ***approximately 26%*** according to data compiled by Bloomberg L.P. Richard Hulf, co-manager of the Artemis Global Energy Fund, likewise called the bid "disappointing," as he values Kodiak Oil at about $3 more than the offer (about $17 per share). At least one analyst set a price for the Company at $19 per share.

4.      The "sale" process for the Company was, and is, also flawed because Kodiak Oil's management and directors stand to potentially receive millions of dollars in special change-of-control payments, unvested stock options, and/or restricted shares that will become fully vested and exercisable upon the completion of the Proposed Transaction.  For instance, Defendants Lynn A. Peterson ("Peterson"), the Chairman of the Board and Chief Executive Officer ("CEO") of the Company, and James E. Catlin ("Catlin"), a director and the Company's Executive Vice President ("EVP") of Business Development, stand to potentially receive the staggering sums of $14,287,827 and $3,937,262, respectively, if the Proposed Transaction is consummated, significantly as a result of this accelerated vesting.  Further, after likely receiving their change-of-control payments, Peterson and Catlin have also secured positions for themselves on the new board of directors of the post-transaction entity.  The Board was thus incentivized to run a process that was primarily in their own interests and adverse to the interests of Kodiak Oil's public stockholders.

5.      Furthermore, the Arrangement Agreement contains deal protection devices that

benefit Whiting Petroleum and Merger Sub at the expense of Company's public stockholders, such as the following: (i) a strict "No Solicitation" provision barring the Company from soliciting any interest from other potential acquirers even at a price in excess of the amount offered by Whiting Petroleum in the Proposed Transaction; (ii) a "matching rights" provision providing Whiting Petroleum with three (3) business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay Whiting Petroleum a termination fee of $130 million plus expenses (about 3.4% of the equity value of the deal) in order to enter into a transaction with a superior bidder. These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives to the Proposed Transaction.

6. These onerous deal-protection provisions collectively "lock up" the Proposed Transaction and prevent the Board from fulfilling its fiduciary duties to the Company's public stockholders. The Proposed Transaction will deny the Company and its non-insider stockholders adequate consideration for their investments, particularly in light of the Company's promising prospects for growth, increased sales, and future profitability.

7. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of good faith, loyalty, and due care, and from Whiting Petroleum's and Merger Sub's aiding and abetting these breaches.

## JURISDICTION

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), (c), and (d). Plaintiff and the Defendants are citizens of and domiciled in different states and the

amount in controversy exceeds $75,000, exclusive of interests and costs.  In fact, the overall value of the Proposed Transaction is approximately $6 billion.  This action is not a collusive one to confer jurisdiction on this Court.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, *inter alia*, Kodiak Oil's principal place of business is located in Colorado, and the Individual Defendants either reside in and/or regularly conduct business in this jurisdiction.  In addition, the acts and transactions complained of herein took place, entirely or in substantial part, in Colorado.

## THE PARTIES

10.      Plaintiff is a resident of Massachusetts and has been a stockholder of Kodiak Oil at all times relevant hereto.

11.      Nominal defendant Kodiak Oil is a Yukon Territory, Canada corporation with its principal executive offices located at 1625 Broadway, Suite 250, Denver, Colorado 80202.  The Company's common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "KOG."  As part of the Proposed Transaction, Kodiak Oil stockholders will be asked to approve the continuance of the Company from the jurisdiction of the Yukon Territory to the jurisdiction of the Province of British Columbia pursuant to Section 302 of the British Columbia Business Corporations Act ("BCBCA") and section 191 of the Yukon Business Corporations Act ("YBCA").  If the continuance is approved, Kodiak Oil stockholders will then vote on whether to approve the Arrangement Agreement.

12.      Defendant William J. Krysiak ("Krysiak") is a director on the Board since 2010 and is the lead non-management director.  Upon information and belief, he is domiciled in Colorado.  Krysiak currently serves as the chair of the Board's Audit Committee, and also sits on the Board's Nomination and Corporate Governance and Compensation Committees.  Krysiak

4

previously served as the principal financial and accounting officer of Western Gas Resources, Inc. ("Western Gas") for over 17 years. James P. Henderson ("Henderson"), Kodiak Oil's current Chief Financial Officer, also previously spent 17 years at Western Gas in several roles, including director of financial planning and analysis.

13.     Defendant Rodney D. Knutson ("Knutson") has been a director on the Board since 2001. Upon information and belief, he is domiciled in Colorado. Knutson also chairs the Board's Nominating and Corporate Governance Committee, and sits on the Compensation and Audit Committees.

14.     Defendant Herrick K. Lidstone, Jr. ("Lidstone") is a director on the Board since 2006. Upon information and belief, he is domiciled in Colorado. Lidstone also chairs the Board's Compensation Committee, and sits on the Nominating and Corporate Governance and Audit Committees.

15.     Defendant Peterson is a director on the Board since 2001 and has been the Chair of the Board since 2011. Upon information and belief, he is domiciled in Colorado. He is also the Company's President and CEO since July 2002. Peterson previously was the owner of CP Resources, LLC ("CP Resources"), an independent oil and natural gas company from 1986 to 2001, and served as the treasurer of Deca Energy from 1981 to 1986.

16.     Defendant Catlin is a director on the Board since 2001, and previously served as Chairman of the Board from 2002 to 2011. Upon information and belief, he is domiciled in Colorado. He was also the Company's Chief Operating Officer from 2006 to 2011, and since 2012 serves at the Company's EVP of Business Development. Catlin was also the owner of CP Resources from 1986 to 2001, and served as founder and Vice President of Deca Energy from 1980 to 1986.

17.     Defendants Krysiak, Knutson, Lidstone, Peterson, and Catlin may be collectively referred to herein as the Individual Defendants.

18.     Defendant Whiting Petroleum is an independent oil and gas company that acquires, explores, develops, and produces crude oil, natural gas liquids, and natural gas in the United States.   Whiting Petroleum is incorporated in Delaware with its principal place of business at 1700 Broadway, Suite 2300, Denver, Colorado 80290.   Its common stock trades on the NYSE under the ticker symbol "WLL."

19.     Defendant Merger Sub is a company organized under the laws of British Columbia, Canada and is a wholly-owned subsidiary of Whiting Petroleum.   Upon approval of the majority of Kodiak Oil's stockholders, Kodiak Oil will merge with and into Merger Sub, with Kodiak Oil continuing as the surviving company pursuant.

20.     The Individual Defendants, Whiting Petroleum, and Merger Sub are collectively referred to herein as "Defendants."

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

21.     The Individual Defendants, as officers and/or directors of the Company, stand in a fiduciary relationship to Plaintiff and the Company's other public stockholders and owe them the highest fiduciary obligations of good faith, loyalty, and due care.

22.     Under Canadian law, the directors and officers of a publicly traded corporation have fiduciary duties of good faith, loyalty, and due care[1] to stockholders.   To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a)     Adversely affects the value provided to the Company's stockholders;

---

[1]     *See* YCBA § 124(1); BCBCA § 142(1); Canadian Business Corporations Act ("CBCA.") § 122(1).   Indeed, unlike Delaware's General Corporation Act § 102(b)(7) that allows Companies to exculpate directors from monetary damages for breaches of the duty of care, Canadian law provides no such reprieve.   YCBA § 124(3); BCBCA § 142(3); CBCA. § 122(3).

(b)     Favors themselves or will discourage or inhibit alternative offers to purchase control of the Company or its assets;

(c)     Adversely affects their duty to search for and secure the best value reasonably available under the circumstances for the Company's stockholders; and/or

(d)     Will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public stockholders.

23.     In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)     Participating in any transaction where the Individual Defendants' loyalties are divided;

(b)     Participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the Company; and/or

(c)     Unjustly enriching themselves at the expense or to the detriment of the public stockholders.

24.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, due care, and good faith owed to Plaintiff and other public stockholders of Kodiak Oil.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of the common stock of the Company (except the Defendants herein and any person, firm, trust, corporation, or other entity related to or

7

affiliated with any of the Defendants) and their successors in interest, who are or will be threatened with injury arising from Defendants' actions as more fully described herein (the "Class").

26.     This action is properly maintainable as a class action.

27.     The Class is so numerous that joinder of all members is impracticable.  As of July 13, 2014, there were reportedly 267,253,911 shares of Kodiak Oil common stock outstanding, owned by hundreds, if not thousands, of stockholders.

28.     There are questions of law and fact, which are common to the Class including, *inter alia*, the following:

(a)     Whether the Individual Defendants have breached their fiduciary duties owed by them to Plaintiff and the members of the Class;

(b)     Whether the Class is entitled to injunctive relief or damages as a result of the wrongful conduct committed by Defendants, as alleged herein;

(c)     Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets;

(d)     Whether Whiting Petroleum and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(e)     Whether Plaintiff and other members of the Class will be irreparably harmed if Defendants are not enjoined from continuing the conduct described herein.

29.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are also typical of the claims of

other members of the Class and Plaintiff has the same interests as the other members of the Class.  Plaintiff thus will fairly and adequately represent the Class.

30.     Defendants have acted in a manner which affects Plaintiff and all members of the Class alike, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

31.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members or substantially impair or impede their ability to protect their interests.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

32.     Plaintiff incorporates each and every allegation set forth above and below as if fully set forth herein.

33.     Pursuant to Fed. R. Civ. P. 23.1, Plaintiff brings this action derivatively on behalf of Kodiak Oil to redress injuries by the Company as a direct and proximate result of Defendants' conduct.

34.     At the time of the commencement of this action, the Individual Defendants were the sole members of the Board.

35.     The Individual Defendants have been named as defendants in this action and are alleged to have breached their fiduciary duties to Plaintiff and Kodiak Oil stockholders, thereby also harming the Company.

36.     A pre-suit demand on the Board is futile, and thus excused, in part, for the following reasons:

      a.      Because the Individual Defendants have caused the Company to enter into the Arrangement Agreement in breach of their fiduciary duties, they are interested in the outcome of this action;

      b.      Because the Individual Defendants stand to receive millions of dollars in special change-of-control payments, unvested stock options, and/or restricted shares that will become fully vested and exercisable upon the completion of the Proposed Transaction, they are interested in the outcome of this action; and

      c.      The wrongful acts complained of herein show a total abandonment of the Individual Defendants' fiduciary duties.

37.    As such, Plaintiff has not made a demand on the Board because doing so would be futile.

38.    Plaintiff has not made a demand on the stockholders of Kodiak Oil to institute this action because such a demand would likewise be futile. At this time, Plaintiff has no way of ascertaining the contact information of the likely thousands of Kodiak Oil stockholders.

## SUBSTANTIVE ALLEGATIONS

### A.  Background

39.    Kodiak Oil is an independent energy company focused on the exploration, exploitation, acquisition, and production of crude oil and natural gas primarily in the Williston Basin of North Dakota in the United States. The Company has a developed oil and natural gas asset base of proved reserves, as well as a portfolio of development and exploratory drilling opportunities within a high-potential resource play.

40.    Recently, Kodiak Oil has demonstrated very strong financial results and strong prospects for future growth thanks to the boom in shale oil production in the United States. For

instance, on April 15, 2013, the Company announced strong results for the first quarter of 2013 ("1Q 2013"). For 1Q 2013, oil and gas sales were 21,700 million barrels of oil equivalent, *a 105% increase* year-over-year and 19% increase quarter-over-quarter. Commenting on the results, Defendant Peterson stated that that he was "pleased with the progress that [Kodiak Oil] achieved during the first quarter" and that he "believe[d] that [the Company was] on course to deliver sustained production growth during the remaining quarters."

41.     On August 1, 2013, the Company announced financial results for the second quarter of 2013 ("2Q 2013"), again reporting extremely positive results and prospects. For 2Q 2013, oil and gas sales were $173.5 million, a *102% increase* year-over-year and a 5% increase quarter-over-quarter. Additionally, reported Adjusted EBITDA for 2Q 2013 was $131.1 million, up *94%* year-over-year and 5% quarter-over-quarter. Defendant Peterson stated the following regarding the positive 2Q 2013 results:

> We are pleased with the progress that we achieved during the second quarter. We are on course to deliver accelerating production growth in the second half of the year and into 2014. Our team has demonstrated great dedication with the recent July 2013 acquisition of properties and is working diligently to integrate them into our operations. Our land group has made significant progress in a short period to improve our working interests in the acquired lands through trades and acquisitions as well as divesting of properties not associated with our core operational areas. Our drilling program continues to see efficiency gains with fewer drilling days which, when combined with improved third-party service costs, is helping to drive down our well costs below $10 million.

42.     On October 31, 2013, the Company announced financial results for the third quarter of 2013 ("3Q 2013"), again positive. For 3Q 2013, oil and gas sales rose to $300 million, a *167% increase* year-over-year and *73% increase* quarter-over-quarter. 3Q 2013 Adjusted EBITDA also grew to $214 million, a *140% increase* year-over-year and a *63% increase* quarter-over-quarter.

11

43.     On February 27, 2014, the Company announced financial results for the fourth quarter of 2013 ("4Q 2013") and full fiscal year 2013.  For 2013, total oil and gas sales were $905 million, up a whopping *121%* from 2012, and 2013 Adjustment EBITDA was $669 million, up *111%* from 2012.  For 4Q 2013, oil and gas sales were $266 million, up 104% year-over-year, and Adjustment EBITDA was $200 million, up 87% year-over-year.

44.     Finally, on May 1, 2014, the Company announced results for the first quarter of 2014 ("1Q 2014").  For 1Q 2014, oil and gas sales were $257 million, up 56% over 1Q 2013, and Adjusted EBITDA was $179.9 million, up 45% from 1Q 2013.

### B.     The Proposed Transaction

45.     Then, on July 13, 2014, Kodiak Oil and Whiting Petroleum issued a joint press release announcing the Proposed Transaction.  The press release stated, in part, the following:

DENVER, COLORADO, July 13, 2014—Whiting Petroleum Corporation (NYSE: WLL) ("Whiting") and Kodiak Oil & Gas Corp. (NYSE: KOG) ("Kodiak") today announced a definitive agreement pursuant to which Whiting will acquire Kodiak in an all-stock transaction valued at $6.0 billion, based on the closing price of Whiting on July 11, 2014, and including Kodiak's net debt of $2.2 billion as of March 31, 2014.

The transaction will create the largest Bakken/Three Forks producer with over 107,000 barrels of oil equivalent per day of production in the first quarter of 2014, 855,000 combined net acres and an inventory of 3,460 net future drilling locations.  The combined company's leading oil-weighted platform will drive meaningful production and operational synergies through complementary acreage positions, the application of technological expertise and greater access to capital to accelerate drilling.  In addition, the transaction materially enhances the combined company's scale, providing a stronger credit profile and greater financial flexibility.  The all-stock transaction will allow both Whiting and Kodiak shareholders to participate in the substantial upside potential inherent in the combination.

Whiting's Chairman, Chief Executive Officer and President James J. Volker said, "We believe this transaction represents a significant opportunity for both Whiting and Kodiak shareholders to benefit from the strength of our combined company. The addition of Kodiak's complementary acreage position and substantial inventory of high return drilling locations will provide the opportunity to drive significant value growth for both Whiting and Kodiak shareholders through an

acceleration in drilling and increase in operational efficiencies. The combined company's shareholders will also participate in Whiting's 175,000 gross (123,000 net) acre, oil-rich Redtail-Niobrara prospect in the NE DJ Basin, where production is rapidly growing. We expect the combined entity to have an initial enterprise value of $17.8 billion, total 2014 production of 152 thousand barrels of oil equivalent per day, and proved reserves of 606 million barrels of oil equivalent (80% oil), providing a leading platform for future oil-driven growth."

Mr. Volker continued, "We expect that the transaction will be accretive to Whiting's cash flow per share, earnings per share and production per share for 2015 and increasingly accretive thereafter. Furthermore, the combined company is expected to have significant financing flexibility, with a ratio of debt to 2014E EBITDA of approximately 1.6x. Additionally, we believe the all-stock transaction structure is credit enhancing."

Lynn A. Peterson, Chairman, President and Chief Executive Officer of Kodiak said, "We are proud to have reached an agreement that provides Kodiak shareholders with the opportunity to own a company with significant upside potential. We expect the combined company to have increased operational and financial flexibility that will allow for accelerated and efficient development of the assets of both companies. In particular, we have been very impressed by Whiting's operating capabilities and technical expertise, and we expect the combined company will benefit from the operating expertise Whiting will be able to bring to bear on the combined portfolio. Additionally, we expect the transaction to be tax free to Kodiak's U.S. shareholders."

**Transaction Details**

Under the definitive agreement, Kodiak shareholders will receive .177 of a share of Whiting stock in exchange for each share of Kodiak common stock they hold, representing consideration to each Kodiak shareholder of $13.90 per share based on the closing price of Whiting common stock on July 11, 2014. This represents a premium of approximately 5.1% to the volume weighted average price of Kodiak for the last 60 trading days. Following the transaction, shareholders of Whiting are expected to own approximately 71% of the combined company on a fully diluted basis, and shareholders of Kodiak are expected to own approximately 29%.

The Whiting senior management team will lead the combined company. Lynn A. Peterson and James E. Catlin will join the Board of Directors of the combined company at closing of the transaction.

Whiting has secured underwritten financing to increase its borrowing base to $4.5 billion with commitments totaling $3.5 billion. This amount is sufficient to provide for all current drawings under Kodiak's credit facility and fund the combined company's ongoing liquidity needs.

**Approvals**

The Boards of Directors of both companies have unanimously approved the definitive agreement, and each will recommend the approval of the transaction to its respective shareholders.  Completion of the transaction is subject to the approval of both Whiting and Kodiak shareholders and certain regulatory approvals and customary conditions.  The transaction is expected to close in the fourth quarter of 2014.

**C.      The Unfair Share Price**

46.      Rather than permitting the Company's public stockholders to reap the benefits of the Company's growth strategy, the Individual Defendants have acted for their personal benefit and to the detriment of the Company's public stockholders by entering into the Arrangement Agreement at an unfair price and through an unfair and inadequate sales process.  In so doing, the Individual Defendants have agreed to a transaction that places a cap on Kodiak Oil's corporate value at a time when the Company is primed for future growth.  Indeed, as indicated in the chart below, the Company's stock price has materially appreciated in 2014 and reached a 52-week intraday high of $14.89 on 7/10/2014.

**Kodak Oil & Gas Corp. (NYSE: KOG)**



47. Yet, in exchange for Kodak Oil stockholders relinquishing their control of the Company,[2] the $13.90 per share price provides a $**0.33 discount** when compared to the July 10, 2014 closing price. This take under deal consideration is in direct conflict with the typical 26% average premium paid in precedent transaction involving North American oil or gas producers deals larger than $1 billion. Tellingly, at least one analyst set a high price target of $19.00 per share for the Company.

48. Further, Tara Lachapelle of Bloomberg L.P. noted, in relevant part, the following

---

[2] After the Proposed Transaction is consummated, Whiting Petroleum stockholders will own 71% of the combined entity and Kodak Oil stockholders will own only 29%.

in an article written following the announcement of the Proposed Transaction:

### Kodiak's Missing Premium Found in Future Whiting Deal: Real M&A

July 15 (Bloomberg)—***Kodiak Oil & Gas Corp. shareholders will get zero premium for agreeing to sell to Whiting Petroleum Corp.*** The real payout may be down the road.

The $4 billion stock swap values Kodiak shares at a discount to their average price in the 20 days leading up to yesterday's deal announcement. ***It's rare to see an acquisition without a premium, and the last "take-under" of a North American oil or gas producer was in 2008, according to data compiled by Bloomberg.*** . . .

. . . .

### Deal Discount

James Henderson, a spokesman for Denver-based Kodiak, said he couldn't comment on speculation of future deals. Eric Hagen, a spokesman for Whiting, which is also based in Denver, didn't respond to a request for comment.

Shareholders will receive 0.177 of a Whiting share for each Kodiak share in an offer valued at $13.90 apiece based on Whiting's July 11 closing price. ***That's a 2.3 percent discount to Kodiak's average level in the prior 20 days***. Whiting and Kodiak said yesterday that the offer is about 5 percent higher than Kodiak's 60-day average price.

***The average premium paid for North American oil or gas producers in deals larger than $1 billion is 26 percent, data compiled by Bloomberg show.***

Both Whiting and Kodiak closed at record highs yesterday, rising 7.7 percent and 4.8 percent, respectively

### Not Pleased

Not all shareholders are pleased with the deal terms. Richard Hulf, co-manager of the Artemis Global Energy Fund, called the bid disappointing. He values Kodiak about $3 more than the offer, or about $17 a share. When choosing which Bakken stocks to invest in, the firm saw Kodiak's acreage as superior to Whiting's, he said. Artemis manages about 20 billion pounds ($34 billion) and owns Kodiak stock.

***"Putting the two together doesn't make it any better for us because we preferred the acreage that Kodiak had in what we regarded as the sweet spot of the play,"*** ***Hulf said in a phone interview from London. "We would like to see a higher bid."***

16

On the other hand, without Whiting's financial heft, Kodiak couldn't afford to accelerate drilling on some of its leases, Lynn Peterson, Kodiak's co-founder, chairman and chief executive officer, said during a conference call yesterday. A slower pace of drilling means a longer wait time until oil profits flow.

"Kodiak investors don't have the immediacy of a payoff through a takeout premium, but they have a longer-term investment that makes sense," David Deckelbaum, a New York-based analyst at KeyBanc Capital Markets, a unit of KeyCorp, said in a phone interview. "This just creates a situation where the amalgamation is worth a lot more than the two entities apart."

. . . .

(Emphasis added).

49. The consideration offered to the Company's public stockholders in the Proposed Transaction is thus grossly unfair and inadequate because the true value of Kodiak Oil's common stock is materially in excess of the amount offered for those securities in connection with the Proposed Transaction.

**D.   The Personal Windfalls to the Individual Defendants Presented by the Proposed Transaction**

50. Pursuant to the press release announcing the Proposed Transaction, Whiting Petroleum management will run the combined company, thereby likely triggering the termination clause of change-of-control agreements between Kodiak Oil and its executives. As a result, Defendants Peterson and Catlin stand to potentially receive $14,287,827 and $3,937,262 on an accelerated basis once the Proposed Transaction is consummated.[3] Defendant Krysiak has also enabled a potential $5,643,355 change-of-control payment to Henderson, his former Western Gas colleague, on an accelerated basis. Other members of the Board further stand to receive

---

[3]    Kodiak Oil & Gas Corp., Definitive Proxy Statement (Schedule 14A), at 35–36 (May 9, 2014), *available at* http://www.sec.gov/Archives/edgar/data/1322866/000104746914004764/ a2220013zdef14a.htm.

special payments for unvested stock options and restricted shares, which will immediately become fully vested and exercisable at the completion of the Proposed Transaction.

51.     Separately, Section 4.19 of the Arrangement Agreement provides that "immediately prior to the Effective Time, [Whiting Petroleum] shall take all necessary corporate action to appoint Lynn A. Peterson and James E. Catlin to the Board of Directors of [Whiting Petroleum]."  Consequently, Peterson and Lynn will receive a sizeable payout of their illiquid Company stock position on an accelerated basis triggered by their change-of-control agreements, and will then also receive the added benefit of continued employment on the combined entity's board.

52.     The aforementioned lucrative payments and continued employment positions therefore cast additional doubt on the flawed process leading up to the Proposed Transaction.

### E.     The Unfair Deal Protections

53.     The Individual Defendants have also agreed to certain onerous and one-sided deal protection devices that ensure that the Proposed Transaction is successful and that no competing or superior offers will emerge for the Company.

54.     For example, Section 4.9(a) of the Arrangement Agreement is a no-solicitation provision that prohibits the members of the Board from soliciting or initiating any inquiries or proposals for the Company.  This provision effectively bars the Board from actively pursuing a topping bid to enhance stockholder value.

55.     Under Section 4.9(b), the Arrangement Agreement does allow the Board, in limited circumstances, to enter into discussions in response to *only* an *unsolicited* "Takeover Proposal."  However, this provision provides no relief to Kodiak Oil stockholders because the Takeover Proposal must be one that: (i) was not the result of any breach of Section 4.9(a) and (ii) can reasonably lead to a "Superior Proposal."  The Board must also conclude in good faith,

after having consulted with its advisors, that the failure to take action in response to the Takeover Proposal would reasonably constitute a breach of the fiduciary duties by the Board under applicable law.

56.      Separately, pursuant to Section 4.9(c) of the Arrangement Agreement, Kodiak Oil must also notify Whiting Petroleum of the identity and material terms of anyone making a Takeover Proposal.  If the Board determines that the competing Takeover Proposal constitutes a Superior Proposal (or could reasonably lead thereto), Section 4.9(b) of the Arrangement Agreement requires the Board to grant Whiting Petroleum at least three (3) business days to amend the terms of the Arrangement Agreement to make a counter-offer that the Company *must* consider in determining whether the competing bid still constitutes a Superior Proposal.

57.      The effect of these provisions is to prevent the Board from entering discussions or negotiations with other potential purchasers unless the Board can first determine that the competing acquisition proposal is, in fact, "superior," and even then, Kodiak Oil must give Whiting Petroleum three business days to match the competing acquisition proposal.  This severely limits the opportunity for a potential purchaser to emerge, and severely limits the ability of the Board members from properly exercising their fiduciary duties.  Indeed, no rival bidder is likely to emerge and act as a "stalking horse" because the Arrangement Agreement unfairly assures that any "auction" or sale process will favor Whiting Petroleum and merely allow it to piggy-back upon the due diligence of other foreclosed potential bidders.

58.      Additionally, the Arrangement Agreement provides that Kodiak Oil must pay to Whiting Petroleum a termination fee of $130 million plus up to $10 million in expenses if the Company decides to pursue another offer, essentially penalizing the alternative bidder for the right to provide stockholders with a superior offer.

19

59.     These draconian deal protection provisions collectively illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are far too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

60.     Accordingly, Plaintiff seeks equitable relief to prevent the irreparable injury that Company stockholders will suffer absent judicial intervention.

## COUNT I

### (DERIVATIVE CLAIM AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACHING THEIR FIDUCIARY DUTIES)

61.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.     The Individual Defendants are violating fiduciary duties owed to Kodiak Oil.

63.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants have violated their fiduciary duties by agreeing to the Proposed Transaction without regard to the fairness of the transaction to the Company.

64.     As discussed *supra*, the Individual Defendants are violating fiduciary duties owed to Kodiak Oil by, among other things, entering into a conflicted transaction without fully informing themselves of the Company's market value.  The Individual Defendants have thus violated their fiduciary duties owed to Kodiak Oil.

65.     The Individual Defendants are also not acting in good faith and have breached their fiduciary duties owed to Kodiak Oil.

66.     As a result, the Company has been and will be irreparably harmed, and is entitled to injunctive relief.

## COUNT II

### (BREACH OF FIDUCIARY DUTY AGAINST THE INDIVIDUAL DEFENDANTS)

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants have violated their fiduciary duties of good faith, loyalty, and due care at the expense of Plaintiff and other members of the Class.

69.     As alleged herein, the Individual Defendants have failed to, *inter alia*:

(a)     Adequately consider the Proposed Transaction;

(b)     Apprise themselves of the true value of the Company, or the benefits associated with pursuing the Proposed Transaction or an alternative transaction, by, among other things, considering the merits of such transactions and engaging in a market check or canvas of the industry; and

(c)     Otherwise take the steps necessary to comply with their fiduciary duties.

70.     As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to Plaintiff and the other members of the Class, and will further a process that inhibits the maximization of stockholder value.

71.     In light of the foregoing, the Individual Defendants and the Company must, as their fiduciary obligations require:

(a)     Undertake an appropriate evaluation of Kodak Oil's value;

(b)     Evaluate the Proposed Transaction and other potential transactions;

(c)     Enable public stockholders to consider the Proposed Transaction in a fair

21

and non-coercive manner, without the threat of deal protection measures or mechanisms that could preclude or dissuade a value-maximizing transaction;

(d)   Refrain from favoring the Individual Defendants' interests over those of the Company's public stockholders, to, among other things, ensure that conflicts of interest do not unfairly influence the stockholders' decisions or available options; and

(e)   Disclose all material facts necessary to permit the Company's public stockholders to make an informed decision with respect to the Proposed Transaction or any alternate transaction**.**

72.   Absent injunctive relief, Plaintiff and the Class will continue to suffer irreparable harm as result of the Individual Defendants' breaches of fiduciary duty, for which Plaintiff and the Class have no adequate remedy at law.

## COUNT III

## (FOR AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES AGAINST WHITING PETROLEUM AND MERGER SUB)

73.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

74.   Defendant Whiting Petroleum and Merger Sub have aided and abetted the Individual Defendants in the aforesaid breaches of their fiduciary duties.

75.   Such breaches of fiduciary duties could not and would not have occurred but for the conduct of Whiting Petroleum and Merger Sub, which, therefore, have aided and abetted such breaches in connection with the Proposed Transaction.

76.   As a result of the unlawful actions of Whiting Petroleum and Merger Sub,

Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive the true value for Kodiak Oil's assets and business.  Unless their actions are enjoined by the Court, Whiting Petroleum and Merger Sub will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to Plaintiff and the members of the Class.

77.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their Kodiak Oil shares.

78.     Plaintiff and other members of the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff, on behalf of himself and the other members of the Class, demand judgment against Defendants as follows:

A.     Declaring that Plaintiff may maintain Count I derivatively on behalf of the Company;

B.     Declaring that Plaintiff may maintain Count II and III on behalf of himself and all other Kodiak Oil stockholders;

C.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the representative of the Class, on a class and derivative basis;

D.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction;

E.     In the event that the Proposed Transaction is consummated, rescinding it and setting it aside, or awarding rescissionary damages to the Class;

F.     Awarding Plaintiff the costs and disbursements of this action and a reasonable allowances for fees and expenses of Plaintiff's counsel and experts; and

G.      Granting Plaintiff and the Class such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.


Dated:  July 23, 2014                              DYER & BERENS LLP


                                                    s/ Jeffrey A. Berens
                                                   Robert J. Dyer III
                                                   Jeffrey A. Berens
                                                   303 East 17th Avenue, Suite 810
                                                   Denver, CO  80203
                                                   Telephone: (303) 861-1764
                                                   FAX: (303) 395-0393
                                                   Email: bob@dyerberens.com
                                                   Email: jeff@dyerberens.com

                                                   MILBERG LLP
                                                   Kent A. Bronson
                                                   Steven Bentsianov
                                                   One Pennsylvania Plaza
                                                   New York, New York  10119
                                                   Telephone: (212) 594-5300
                                                   FAX:  (212) 868-1229
                                                   Email: kbronson@milberg.com
                                                   Email: sbentsianov@milberg.com

                                                   *Attorneys  for Plaintiff*

**VERIFICATION**

I, ROBERT FIORAVANTI, hereby verify that I am familiar with the allegations in the Verified Derivative and Class Action Complaint for Breach of Fiduciary Duties and Jury Demand ("Complaint"), and I have authorized the filing of the Complaint.  I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 23 2014

Robert Fioravanti